# GUINEY, Appellant, v. SOUTHERN ELECTRIC RAIL-ROAD COMPANY.

### Division One, March 12, 1902.

1. **Negligence**: FIREMAN: ORDINARY CARE. From the exercise of ordinary care in approaching a street car crossing no one in any walk of life is exempt.

2. ———: ———: ORDINARY CARE: "LOOK AND LISTEN:" INSTRUCTION: NEGLIGENCE AS MATTER OF LAW. An instruction which required the driver of a fire department fuel wagon on the way to a fire on approaching a street car crossing, "to exercise ordinary care upon his part, and to look and listen before driving on defendant's track, whether its servants operating its car gave signals or not, and if the jury believe that he failed to exercise ordinary care, and failed to look and listen, and thereby directly contributed to the collision, etc., their verdict should be for the defendant," did not declare as a matter of law that a failure to look and listen is under all circumstances negligence, but required of him the exercise of nothing more than ordinary care. Besides, where the top of the approaching car was plainly visible to the driver, the use of the words "look and listen" was plainly appropriate.

Appeal from St. Louis City Circuit Court.—*Hon. P. R. Flitcraft,* Judge.

AFFIRMED.

*Virgil Rule* and *Jesse A. McDonald* for appellant.

(1) (a) The giving of instruction 10 was error because it placed upon plaintiff's intestate a higher degree of care than is required of a fireman in responding to an alarm of fire, and declares as a matter of law a failure to look and listen is under all circumstances negligence. Smith v. Railroad, 61 Mo. 591; Olsen v. Railroad, 152 Mo. 430; Magee v. Railroad,

151 Mass. 241; Warren v. Mendenhall, 79 N. W. 661; Donahoe v. Railroad, 83 Mo. 560; Schroeder v. Railroad, 108 Mo. 322; Railroad v. Jacobs, 101 Ala. 149.    (b)    Whether a failure to look and listen is negligence in this case, was a question of fact for the jury.    And an instruction which declares a failure to look and listen negligence without further declaring that by looking and listening he would have seen and heard in time to have avoided injury to himself, is prejudicial error. Johnson v. Railroad, 77 Mo. 553; Kelsay v. Railroad, 129 Mo. 372; Jones v. Barnard, 56 Mo. App. 512.    (c)    Instruction 10 should have been refused because there was absolutely no evidence that Jere Guiney did not look and listen.    It is error to give an instruction if there is no evidence upon which to base it.    Williams v. Railroad, 96 Mo. 275; Evans v. Railroad, 106 Mo. 594; Graham v. Gross, 50 Mo. App. 377; Seckinger v. Philibert, 129 Mo. 591; 2 Pat. Complete Dig., 542, 543; Mammerbeg v. Railroad, 62 Mo. 563.    (2)    The several ordinances of the city of St. Louis, relative to the fire apparatus having the right of way and to the operation of street railroads were properly admitted in evidence and were binding on defendant.    Jackson v. Railroad, 157 Mo. 642; Chouquette v. Railroad, 152 Mo. 247; Cooney v. Railroad, 80 Mo. App. 230.    (3)    Instruction 11 should have been refused because it exonerated defendant's motorneer from all negligence prior to the time his car reached the intersection of the streets.    (4)    The court should have sustained the plaintiff's motion for a new trial because the verdict was not supported by the evidence.

*Lubke & Muench* for respondent.

(1)    The instructions given for defendant must be read in connection with those given for the plaintiff.    When this is done here it will readily be seen that the criticisms of appellant upon the last two instructions given for defendant

are wholly without merit or foundation. Henschen v. O'Bannon, 56 Mo. 289; Easley v. Railroad, 113 Mo. 236; Burdoin v. Trenton, 116 Mo. 358. "The instructions are to be taken as a whole, are so taken by men of common understanding, and can be understood in no other way." Owens v. Railroad, 95 Mo. 181; Hughes v. Railroad, 127 Mo. 452; Deweese v. Mining Co., 128 Mo. 423; Gordon v. Burris, 153 Mo. 237. (2) The last two instructions given for defendant were both correct and directly in line with the previous decisions of this court. It was for the jury to determine whether or not he drove his horses directly over the lifeguard of the car recklessly because he was not looking or listening. And it was also for them to determine whether or not the motorman had done everything he could to stop the car "on the first appearance of danger," and whether or not he had brought it to a standstill in the middle of Gratiot street so that the north half of the street crossing was open to Guiney for his "right of way." Smith v. Railroad, 61 Mo. 592. One who is about to cross a railroad track at a street or public crossing must look and listen for a train where by listening he can hear and by looking he can see an approaching train, and the omission of either would be such negligence on his part as to prevent a recovery. And he is not relieved of such duty even though the company may have been derelict in the performance of its duty in giving the statutory signal. He must use both his eyes and ears to avoid injury. The duty continues until the dangerous locality is passed. Boyd v. Railroad, 105 Mo. 371; Butts v. Railroad, 98 Mo. 272; Stepp v. Railroad, 85 Mo. 229; Lenix v. Railroad, 76 Mo. 86; Zimmerman v. Railroad, 71 Mo. 476. The rule is also applicable to cable and electric street railway crossings. Smith v. Railroad, 52 Mo. App. 36; Sonnenfeld v. Railroad, 59 Mo. App. 668; Culbertson v. Railroad, 140 Mo. 63. (3) When both parties are guilty of negligence which contributes directly to the injury, there can be no recovery of damages by or for the injured party. This rule is without exception or

qualification. Hogan v. Railroad, 150 Mo. 36; Corcoran v. Railroad, 105 Mo. 399. Where the negligence of the parties is mutual, there can be no recovery. Murray v. Railroad, 101 Mo. 236; Kellny v. Railroad, 101 Mo. 67; Dougherty v. Railroad, 97 Mo. 667. (4) Instruction 10 was not erroneous in assuming that by looking and listening Guiney could have seen the car. The evidence was all one way as to this. Sitting on the front of the open fuel wagon, he had a plain view of the top of the moving car and of the trolley pole, which indicated the direction the car was going, and with the car top and pole in his plain view, he could also, by giving attention, have heard the car. Culbertson v. Railroad, 140 Mo. 63; Dickson v. Railroad, 104 Mo. 491; Pope v. Railroad, 99 Mo. 400; Walker v. Kansas City, 99 Mo. 647; Bank v. Hatch, 98 Mo. 376.

BRACE, P. J.—This is an action by the widow of Jeremiah Guiney, deceased, to recover the statutory damages of $5,000 for the death of her husband, which resulted from injuries received by him in a collision between a wagon and team being driven by him, and one of the cars of the Southern Electric Railroad Company, at the crossing of Sixth and Gratiot streets in the city of St. Louis, which occurred on the eleventh of February, 1898. The verdict was for the defendant, and the plaintiff appeals. The cause of action stated in the petition was negligence of the defendant's employees in the management of its car. The answer, a general denial, and a plea of contributory negligence, upon which issue was joined by reply. No question is raised upon the pleadings, or the action of the court in the admission or exclusion of evidence.

Gratiot street runs east and west, and is about thirty feet wide. Sixth street runs north and south, and upon it is located the defendant's double track. The deceased was an employee of the fire department of said city and engaged in driving one of the fuel wagons of the department (a two-horse wagon about five by twelve feet in size equipped with a gong, and loaded

with about twenty-five bushels of coal). Prior to the collision, in response to a fire alarm, the fire engine and hose reel belonging to the same services with this fuel wagon, going west on Gratiot street, passed over this crossing and out of sight and hearing therefrom. About ten or fifteen minutes later the deceased driving the fuel wagon and following after in the same direction, approached this crossing at a rapid rate of speed, one of his horses galloping, the other trotting. At the same time defendant's car going north on Sixth street approached the crossing from the south. On the east side of Sixth street there was a board fence about twelve feet high extending from the south side of Gratiot street south along the east side of Sixth street about one hundred feet, which prevented the motorman and those on the car, while traveling that distance toward the crossing, from seeing the approaching wagon and team. But the deceased from his position on the wagon while traveling the same distance on Gratiot street could see the trolley and the top of the car on Sixth street approaching the crossing. The wagon and car each proceeded on its way until they collided, somewhere between the center and north line of Gratiot street. By the contract the front wheels of the front truck of the car were thrown from the track and the fender bent. The left hind wheel and tongue of the wagon were broken. The deceased was thrown from his seat to the ground, receiving the injuries from which he soon thereafter, on the same day, died. He never checked the speed of his team from the time he came in view of the trolley and the top of the car, but when within a few feet of the car, seems to have deflected his team from its course, to the right, the horses jumping over the fender and breaking the tongue, the front wheel of the wagon catching in the drawhead, and a hind wheel behind the fender.

The evidence of other facts in the case is conflicting. That of the plaintiff tended to prove that the gong on the wagon was being sounded continuously from Broadway, the next street east until the wagon reached the crossing; that the

car was going at a rapid rate of speed, and was not checked until the collision took place; that the bell on the car was not heard by persons in the neighborhood, and that the car struck the wagon.    That of the defendant tended to prove that the gong on the wagon was not heard by the motorman, the conductor or passengers on the train; that the power was thrown off the car about two hundred feet south of the crossing, and thereafter the bell was continuously rung, the train slowing down until the crossing was reached when the train going slowly, the wagon and team became visible, the brakes were immediately applied and the car was struck by the wagon and team, as it was about to stop.

The case was submitted to the jury on the following instructions:

"The court on motion of the plaintiff gave the jury the following instructions:

"1.    If the jury find and believe, from the evidence, that Gratiot and Sixth streets were, on February 11, 1898, open, public streets within the city of St. Louis, and if the jury further find and believe, from the evidence, that at said time, the defendant was using the tracks, railway and car mentioned in the evidence, for the purpose of transporting persons for hire from one point to another in said city, as a street railroad operated by electricity, and that on said day, Jeremiah Guiney was plaintiff's husband, and an employee of the fire department of the city of St. Louis, and was discharging his duty therein as the driver of a fuel wagon, said fuel wagon being at the time a part of the fire apparatus of said department and then being used in the business of said department; that plaintiff's said husband was at said date driving the horses attached to said fuel wagon along Gratiot street going in a westwardly direction; and if the jury further find and believe, from the evidence, that while plaintiff's said husband was so driving the horses attached to said fuel wagon along Gratiot street and across Sixth street at its intersection with Gratiot street, de-

fendant's car ran into and collided with said wagon, causing the said Jeremiah Guiney to be thrown from said wagon and injured to such an extent as to cause his death; and if the jury further find and believe, from the evidence, that defendant's agents, servants or employees in charge of and operating said car either saw, or by keeping a vigilant watch for vehicles moving toward the track upon which said car was being propelled, could have seen, said horses and fuel wagon moving towards and across said track and in danger of injury, and that after seeing said horses and fuel wagon moving towards said track, or, after they could have seen by keeping a vigilant watch as aforementioned, defendant's agents, servants and employees or either of them, could, by stopping said car within the shortest time and space possible under the circumstances, have averted said collision and injury, and neglected so to do; and if the jury find and believe, from the evidence, that said Jeremiah Guiney exercised ordinary care and prudence in driving towards and across said track, then your verdict should be for the plaintiff.

"2.   The court instructs the jury that by the terms of ordinance No. 1275 read in evidence, the defendant's motorman, conductor or other persons in charge of its car mentioned in evidence, were bound to keep a vigilant watch for vehicles moving towards defendant's track, and upon the first appearance of danger to such vehicle the person or persons in charge of said car were bound to stop said car within the shortest time and space possible, and a failure to keep such vigilant watch and to stop said car (if you find from the evidence that defendant's servants, agents or employees did so fail) was negligence upon the part of defendant.

"3.   The court instructs the jury, that by the terms of ordinance No. 134 read in evidence, the person or persons in charge of defendant's car mentioned in the evidence were required to give to the fuel wagon driven by Jeremiah Guiney (if you find from the evidence that said fuel wagon was a part

of the fire apparatus of the city of St. Louis) the right of way upon the street over which it was passing (if you find from the evidence said fuel wagon was going upon said street in response to an alarm of fire) and if from the evidence you find that the person or persons in charge of said car either carelessly or wantonly obstructed or interfered with 'said fuel wagon while going to a fire, such conduct on the part of said person or persons is negligence on the part of defendant.

"4. The jury are the sole judges of the weight of the evidence and the credibility of the witnesses, and in determining the same you may consider the interest, if any, which any witness may have in the result of the trial, his manner upon the stand, and the probability or improbability of his testimony, in connection with` all the facts and circumstances proven in the case. If you believe that any witness has willfully sworn falsely to any material fact in the case, you are at liberty to disregard the whole or any part of such witness's testimony.

"5. By the term 'ordinary care and prudence,' as used in these instructions, is meant that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances. And a failure to exercise ordinary care as so defined is negligence. The burden of proving that Jeremiah Guiney did not exercise ordinary care to avoid the collision and injury which resulted in his death is upon the defendant.

"6. If, under the other instructions given, you find for plaintiff, you will assess her damages in the sum of five thousand dollars."

The court, on motion of defendant, gave the jury the following instructions:

"8. The charge of negligence made by plaintiff against defendant by this action must be proved to the satisfaction of the jury by the preponderance of the evidence. The jury have no right to presume negligence, and if the evidence does

not preponderate in favor of plaintiff, then the verdict should be for defendant.

"9. If, from the evidence, the jury believe that both the deceased, Jere Guiney, and the servant of defendant operating its car, were equally guilty of negligence which directly contributed to the injury and death of said Guiney, then the verdict should be for the defendant.

"10. The court also instructs the jury that it was the duty of the deceased, Jere Guiney, to exercise ordinary care upon his part, to make use of his faculties on approaching the crossing of defendant's track; that whether the servants operating defendant's car by electricity gave signals or not, it was the duty of Guiney to look and listen before driving on defendant's track, and if, from the evidence, the jury believe that Guiney failed to exercise ordinary care, and failed to look and listen, and thereby directly contributed to the wagon and defendant's car coming into contact and causing the injuries which produced said Guiney's death, then their verdict should· be for the defendant company.

"11. The court also instructs the jury that if, from the evidence, they believe that the motorman of the car had no warning of the approach of the wagon nor could have known thereof by keeping a vigilant watch as indicated in other instructions given, regard being had to the circumstances and surroundings, until both the car and the wagon had reached the intersection of Sixth and Gratiot streets; and the jury also believe that the wagon and car were then both going at such a speed that it was impossible for defendant's motorneer to avoid a collision between them, then the jury should find a verdict for the defendant."

To the giving of which instructions in behalf of defendant, the plaintiff then and there, by her counsel, duly excepted.

Another instruction asked by the plaintiff and refused by the court appears in the record, but as no objection was made to it in the motion for new trial, it is not before us for review.

And while the refusal of the court to give this instruction, and the giving of instruction numbered 8 for the defendant, is assigned as error, no point is made upon either. The only points made for reversal are upon instructions numbered 10 and 11 for the defendant, and to these only need our attention be directed.

(1) The first objection urged to instruction number 10 is that "it placed upon plaintiff's intestate a higher degree of care than is required of a fireman in responding to an alarm of fire, and declares as matter of law a failure to look and listen is under all circumstances negligence."

The answer to this objection to the instruction is apparent on the face of it. The instruction does not declare that a failure to look and listen is under all circumstances negligence. Nor does it undertake to prescribe any general rule on that subject. The instruction was addressed specifically to the facts of the case, and instructed the jury that it was the duty of the deceased, on approaching the track of defendant, to exercise ordinary care, to make use of his faculties, to look and listen, and if he failed to exercise ordinary care, and failed to look, and failed to listen, and if his failure to do all these three things contributed to his injuries, then the verdict should be for the defendant. But no such verdict was authorized upon the failure of the deceased to look and listen only. Under it they might have found that he failed to look and listen and yet under this instruction a verdict for the defendant was not authorized unless they found that he failed to exercise ordinary care. This instruction, while a little more specific, required the exercise of no higher degree of care than was required by plaintiff in her first instruction, i. e., "ordinary care," from the consequences of a failure to exercise which, no one is exempt in any walk of life.

(2) The second objection to the instruction, is stated as follows: "An instruction which declares a failure to look and listen negligence without declaring that by looking and listen-

ing he would have seen, and heard, in time to have avoided injury to himself, is prejudicial error," is of no more force than the first. As said, the instruction does not declare "a failure to look and listen negligence," and in view of the fact that it authorized a verdict for defendant only in case the jury also found that he failed to exercise ordinary care, and that such failure "directly contributed to the wagon and defendant's car coming into contact," and in view of the further physical fact established by the evidence, that the trolley and the top of the approaching car were plainly visible to him for a distance affording him ample time to have avoided any injury therefrom, this objection is clearly untenable.

(3) We are wholly unable to appreciate the force of the objection to instruction number 11, if any it has, which is claimed to be erroneous because "it exonerated the defendant's motorneer from all negligence prior to the time the car reached the intersection of the streets," and as we do not see wherein the verdict was not supported by the evidence, the only other error assigned, the judgment will be affirmed.

All concur, except *Valliant, J.*, absent.