FRED H. BARR, Respondent, v. CITY OF FAIRFAX, Appellant.

Kansas City Court of Appeals, May 15, 1911.

1. NEGLIGENCE: Contributory Negligence: Sidewalks. In an action for damages for personal injuries caused by falling upon a strip of ice on a sidewalk of defendant city, where plaintiff slipped and fell while stepping to one side of the walk to let a pedestrian pass, held, that the law did not require plaintiff to leave the sidewalk to avoid encountering the ice, but that he might lawfully proceed thereon, if he had reason to believe that he could do so safely. Hence, plaintiff should not be held guilty of contributory negligence as a matter of law. It was a question for the jury to say whether he was in the exercise of reasonable care.

2. ————: Presumption of Law: Instructions. Where it was shown that the ice which had accumulated on the sidewalk one day would melt during the midday hours of the next, which process had been in progress four or five days before plaintiff's accident, this condition was sufficient evidence for the jury to presume that defendant's officers, notwithstanding that they knew the walk had been cleared of ice after it had melted, must also have known that it would re-form again later in the day, and form anew an obstruction on the sidewalk. Consequently there is sufficient foundation for the presumption of law that the city's officers should have known in the short space of two or three hours, or less, after the ice had been cleared away, that it would re-form again, and to give an instruction grounded on such a presumption is not error.

Appeal from Atchison Circuit Court.—*Hon. Wm. C. Ellison*, Judge.

AFFIRMED

*John P. Lewis* and *L. D. Ramsay* for appellant.

*Hunt, Bailey & Hunt* and *John W. Stokes* for respondent.

BROADDUS, P. J.—This is a suit for personal injury to the plaintiff caused by falling upon ice on a sidewalk of defendant in Fairfax, a city of the fourth class, containing about eight hundred inhabitants. The sidewalk was composed of concrete and well constructed, with a slope outward and extended east and west. Coming down from the roofs of the buildings on the north were two water pipes used for the purpose of conducting water from rains and melting snow to the ground. These pipes passed through tiling placed under the sidewalk. Three or four days before the 8th day of January, 1910, the date of the injury, water from melting snow which had accumulated on the roofs of the buildings had frozen in one of the pipes, causing it to overflow onto the sidewalk and run over instead of under it where it froze in a strip about three feet wide according to plaintiff's statement, but not exceeding two feet wide as testified to by witnesses for defendant.

The plaintiff knew that ice had been on the sidewalk for three or four days before his injury and had passed over it daily in safety. He had crossed it once before on that day. Plaintiff was asked to tell what happened to him at the place. He answered: "Well, I was walking along and after I left the bank, I went to the postoffice, and was walking along and I knowed the ice was there, but I thought all the time the ice was going to be cleaned off, and when I got there I took ordinary good care to keep from hurting myself; and then I met this young lady, and I stepped off to one side, my heels flew out and I went down and broke my arm." He stated that he received his fall between three or four o'clock p. m.

The young lady referred to by plaintiff was Miss

May Jones, twelve years old, who testified: That the ice had been on the sidewalk for three or four days; that she was passing along on the side next to the street when she met plaintiff at the strip of ice; that neither of them stepped out of the other's way as there was plenty of room for persons to pass; that they passed probably three or four feet apart; that neither changed his or her course; that she did not notice what plaintiff was doing; that she did not notice him looking towards herself; that he stepped across the ice; and that she had just started across when he fell.

There was evidence tending to show that the officials of the city knew prior to the plaintiff's injury that the ice had formed on the sidewalk as described, and there was evidence tending to show that on the evening of the day plaintiff was injured, and prior thereto, at about 2 o'clock p. m. the ice had been taken off the sidewalk and it was also in evidence that the persons occupying the buildings endeavored to keep it free from ice, but that the water from the snow melting on the roof would run over the walk and freeze again. And there was evidence that when plaintiff fell he was looking across the street. At the close of the plaintiff's evidence defendant asked the court to direct a verdict in its favor which the court refused to do. The verdict and judgment were for the plaintiff and defendant appealed.

The principal insistence relied on by appellant for reversal is that the plaintiff did not make out a case for the jury. It is argued that all the evidence taken together "does not show any such obstruction of the sidewalk by reason of ice, as would make the city liable. The sidewalk was itself a good one, on a grade of only seventeen inches in twenty-five feet; the ice, such as there was, was but a small strip, about two feet wide, not rough or uneven, caused by melting snows that had run down an overflowed pipe from roofs on buildings adjoining walk, not such as would be dangerous or call for special care in a village of eight hundred inhabitants. One could

easily step over it.  It did not arise to the dignity of an obstruction."

We do not apprehend that the size of the municipal corporation in question like this would create a different standard governing the degree of care a city is required to exercise in keeping its streets in a proper condition for the use of the public.  Ice on a sidewalk must be conceded to be more or less a menace to the safety of persons passing over it, and where the condition in that respect is not general covering all the streets, but confined to a particular locality and susceptible of being removed by the exercise of reasonable diligence upon the part of the municipality, the failure of such municipality to perform its duty within a reasonable time after the existence of the obstruction is or should be known, constitutes negligence.  And the quantity of ice in a given case whether great or small we do not think would affect the question of liability.  It is the dangerous character of ice whether in great or small quantities that makes it an object of obstruction to travel.

Coming to the real question, which is not whether the city was guilty of negligence in permitting the ice to remain on the sidewalk for an unrasonable length of time, which under plaintiff's evidence must be taken as true according to the finding of the jury, but was the plaintiff himself in the exercise of reasonable care to avoid the obstruction?

It is argued that as the plaintiff knew the ice was on the walk in plain view and but a narrow strip over which he could have passed at a step, that he was guilty of such contributory negligence as precluded his right to recover.  That as the obstruction was plain to be seen, he should have avoided stepping upon it.  To support this view, the case of Woodson v. Metropolitan Street Railway Co., 224 Mo. 685, is relied on.  But we do not think the circumstances are similar. There the sidewalk proper was not obstructed, the obstruction was in the parking between the street and the paved sidewalk.  The de-

ceased left the paved sidewalk to cross over the parking, and in doing so, struck his foot against the obstruction in the parking, stumbled, fell and was injured. It was shown that the obstruction had existed for several months, of which deceased had knowledge. The court held: that deceased was guilty of contributory negligence as a matter of law, because he undertook to cross over the street at the point obstructed. Other cases relied on are similar in their characteristics.

Here the plaintiff unless he left the sidewalk and undertook passage by the street outside was bound to encounter the ice. But the law did not require him to do that. He might lawfully proceed upon the sidewalk if he had reason as a prudent person to believe that he could do safely. He and others had safely passed over the ice previously. When he encountered the obstruction he saw it, but in moving aside to let the young girl pass he slipped and fell. His attention was very naturally attracted to the person he was meeting and his act in stepping aside for her to pass was also a very natural action, and if in doing so he slipped upon the ice and fell, he should not be held guilty of contributory negligence as a matter of law. It was a question for the jury to say whether plaintiff was in the exercise of reasonable care.

And we are persuaded that under the circumstances there was evidence tending to show that the icy condition, of the locality in the sidewalk had existed for such a length of time, that the jury might reasonably infer that the city's officers had knowledge of its existence. In fact, there was evidence from which the jury might, as a matter of fact, find that its officers did have such knowledge.

General objections are made to all of plaintiff's instructions which we do not think are well founded, besides the special objection is made to number six, viz: that it is merely an abstraction. It reads as follows: "It is not necessary to show actual notice to any of de-

fendant's officers of the obstruction or the defective condition of the sidewalk, if any, in order to render the defendant liable for injuries, if any, resulting therefrom; it is sufficient to show that such defective condition existed for such a length of time prior to the alleged accident that the defendant's officers might have known of it and repaired it by the exercise of ordinary care and diligence." It seems to us that the instruction deals directly with the application of the law to the facts and that in no sense can it be justly charged with being a mere abstraction.

The defendant asked the court to instruct the jury as follows: "The court instructs the jury, that the defendant city was not required to keep its sidewalks so entirely free from ice as to prevent them from becoming slippery. All that was required was that it should keep the sidewalk in a reasonably safe condition for travel by the public, and was only required to use such precaution in keeping same clear of ice, or protected from its effects, as would have been done by any ordinarily prudent person; and although the jury may believe from the evidence that ice had accumulated on said sidewalk, but that it had shortly prior to plaintiff's injury been scraped or cleaned away as well as it could reasonably be done, under the circumstances, whether done by the city officers or by adjacent owners of lots, or others, then plaintiff could not recover." The court refused to give the instruction as asked and added the following words: "for injuries resulting from a fall caused by ice thereafter formed (if any) on the sidewalk, without the knowledge of the town's officers."

The contention is that there is no foundation for the presumption of law that the officers of the town should have known in the short space of two or three hours, or less, after it had been cleared that it would reform again. But we think there was, as it was shown that the ice which had accumulated on the sidewalk one day would melt during the middle hours of the next, which

process had been in progress for four or five days before plaintiff's accident. This condition was sufficient evidence for the jury to presume that defendant's officers, notwithstanding they knew the walk had been cleared of ice after it had melted, they must have also known that it would reform again later in the day and form anew an obstruction on the sidewalk. Under such circumstances it became their duty to remove the cause that produced the condition of unsafety or have it removed.

The effect of the instruction would have relieved the city of liability in case they removed the ice once a day although they may have known that it would reform again later during the same day. We are of the opinion this could not be the exercise of reasonable care in view of the fact that the city had the power to provide against a repetition of the obstruction.

After a careful consideration of all the instructions we are unable to find error in any of them. Affirmed. All concur.