HELEN GREEN et al., by MARY GREEN, Curatrix, Respondents, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

**St. Louis Court of Appeals, April 2, 1912.**

1. **NEGLIGENCE: Instructions: Submitting Negligence as Contributing Cause.** In an action for death, negligently inflicted, where there was evidence to support the issue of contributory negligence, it was reversible error for the court to instruct the jury that they should return a verdict for plaintiff if they found that defendant's negligent acts or omissions complained of "directly *contributed* to cause" decedent's death, as, under the facts of the case, the jury should have been required to find that such acts or omissions *caused* decedent's death.

2. ———: ———: **Confining to Issues.** The instructions, in an action for negligent death, must limit the jury, in their consideration of defendant's negligence, to the specific acts and omissions relied on as negligence in the petition.

3. **RAILROADS: Negligence: Duty of Pedestrian Approaching Crossing.** One approaching a railway crossing must exercise reasonable and ordinary prudence to avoid the danger necessarily to be apprehended there, and the same act at such a place may be careful or negligent, according to the variant circumstances.

4 **STREET RAILWAYS: Fire Department Wagons: Collision: Contributory Negligence.** An ordinary driver must approach a street railroad track cautiously, with his vehicle under control, looking and listening, ready to stop and give way to street cars, and must exercise reasonable prudence to avoid injury according to the facts; but a driver of a hose wagon of a city fire department need not proceed with the deliberation and caution of an ordinary driver, and need only drive with the care that a prudent person would exercise under similar circumstances.

5. **STREETS: Fire Department Wagons: Right of Way: Street Railways.** Where a municipal ordinance gives fire department wagons the right of way, such wagons have a right of way over other vehicles on the streets, by virtue of such ordinance as well as public necessity; and street cars have no right to intercept or obstruct them.

6. **STREET RAILWAYS: Fire Department Wagons: Collision: Contributory Negligence: Question for Jury.** In an action against a street railway company for the death of a driver of

a hose wagon of a city fire department, killed in a collision between the wagon and a street car, it was shown that the gong on the wagon was continuously sounded so loudly that it could have been heard for blocks, that decedent slowed the wagon down just before reaching the street on which the track was located, on seeing a man on that street waving, but a coal wagon went by at that time, and it seeemed that it might have been the thing about which the man was giving warning, and the way appearing to be clear, decedent allowed the horses to go forward in a lope, and when the horses' heads reached the track, the approaching car was observed, and decedent, being unable to stop the further progress of the team or get the wagon off of the track, the car collided with the wagon, and decedent received injuries which resulted in his death. *Held*, that whether decedent was guilty of contributory negligence in driving on the track without having his team under control was a question for the jury.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*Glendy B. Arnold* for appellant; *Boyle & Priest* of counsel.

(1) Deceased was guilty of contributory negligence as a matter of law in attempting to cross the Olive street tracks at a rate of speed which rendered it impossible for him to avoid a collision with the car. There being no last chance doctrine in the case, the demurrer should have been given. Dey v. United Rys. Co., 120 S. W. 134; Roberts v. Railroad, 166 Mo. 370; Hudson v. Railroad, 101 Mo. 13; Ries v. Transit Co., 179 Mo. 1. (2) The fact that deceased was a fireman going to a fire did not relieve him of the duty the law imposes upon all persons crossing railroad tracks. Guiney v. Railroad, 167 Mo. 604; Railroad v. Baker, 28 So. 87. (3) Plaintiff's first, third and fourth instructions are erroneous because of the use of the words "directly contributed." Hof v. Transit Co., 213 Mo. 445; Krehmeyer v. Transit Co., 120 S. W.

78; Schmidt v. Transit Co., 120 S. W. 96; Wilson v. Transit Co., 121 S. W. 1083. (4) Plaintiff's first and second instructions are erroneous because they broaden the issues and authorize a recovery on negligence not charged by the second count of the petition. Allen v. Transit Co., 183 Mo. 432; Jacquin v. Railroad, 57 Mo. App. 331; Chitty v. Railroad, 148 Mo. 75. (5) Plaintiff's third instruction is erroneous. It authorizes a recovery for a violation of the speed ordinance when it was not shown by the evidence that the place of the accident was within the district defined by the ordinance. Breckinridge v. Insurance Co., 87 Mo. 62.

*A. R. & Howard Taylor* for respondents.

The driver had the right to expect the railroad would obey the law and to regulate his action accordingly. Weller v. Railroad, 164 Mo. 199; Riska v. Railroad, 180 Mo. 190; Eckhard v. Railroad, 190 Mo. 613; Powers v. Railroad, 202 Mo. 280; Gage v. Railroad, 211 Mo. 157; Wilson v. Railroad, 135 S. W. 475.

STATEMENT.—Plaintiffs, who are minors, sue for the death of their father, hose wagon driver of the city fire department, who was killed in a collision between the hose wagon and defendant's street car, at Twenty-second and Olive streets in the city of St. Louis. Plaintiffs had verdict and judgment for five thousand dollars and defendant has appealed.

The negligence relied upon as grounds of recovery in plaintiffs' petition is the violation by defendant of three city ordinances, which were introduced in evidence. The first gives fire apparatus the right of way upon any street when going to an alarm of fire and makes it a misdemeanor for any street car operative to carelessly obstruct or intercept such right of way; the second requires motormen to keep a vigilant watch

for all vehicles moving towards the track and on the first appearance of danger to a vehicle to stop the car in the shortest time and space possible; the third prohibits the running of cars at a rate of speed exceeding ten miles per hour in a certain defined district, or at any other speed dangerous to persons on the streets. The defendant's answer consisted of a general denial followed by a plea of contributory negligence. The reply was a general denial.

At the time with which this case is concerned Olive street and Twenty-second street were and for a long time had been open and intersecting public streets in the city of St. Louis. Defendant operated a double track street railroad along Olive street and across Twenty-second street, the east bound cars running on the south track and the west bound cars on the north track. Each of the streets at the point of their intersection was thirty-six feet wide from curb to curb and sixty feet wide from building line to building line. Olive street sloped downward with rather a steep grade from the west into Twenty-second street and Twenty-second street sloped downward with a steeper grade from the north into Olive street. Olive street was paved with granite, Twenty-second street with brick. Locust and St. Charles streets and Washington avenue ran parallel to Olive street and were also crossed or intersected by Twenty-second street. Locust street was the first street north of Olive street, St. Charles the second and Washington avenue the third. Pine street also ran parallel with Olive street and was the first street south of Olive street.

Plaintiff's evidence tends to prove that their father, James Green, who was young and of powerful build, great strength and good habits, was an experienced fireman, driver of a hose wagon in the fire department of the city of St. Louis. On January 30, 1905, about four-thirty o'clock in the afternoon the

165 Mo. App.—2

hose wagon and its crew, returning to quarters from
a fire at Jefferson avenue and Olive street, had
reached Twenty-second street and Washington ave-
nue and were proceeding northwardly along Twenty-
second street when another alarm reached them, this
time from Twenty-second and Pine streets, due south
along Twenty-second street. Green, who was driving,
swung the team around and started south along
Twenty-second street; Casserly sat on the seat beside
him with his foot working the fire gong. This seat
was over the front axle and some ten feet back of the
horses' heads. Captain Brennan and Moore stood on
the rear step. Shiveley stood up in the wagon. The
hose lay coiled in the bottom of the wagon. The
wagon with its load weighed two and one-half tons
and was six or seven feet long and had a wheel gauge
of four feet ten inches. The team trotted up an in-
cline to St. Charles street, where the down slope of
Twenty-second street toward the south began. Down
this incline the team went at a gallop, but not exceed-
ing the usual rate of speed going to a fire. Green,
holding the lines, had his legs braced. Casserly was
ringing the fire gong continuously. It was a dry,
rather clear day, the gong rang loud and could be
heard for three blocks around. They passed Locust
street and started on toward Olive. But in Olive
street a man stood waving westwardly as if at some
one coming eastwardly along Olive street. Green
slowed down the team at the alley, 105 feet north of
Olive street, until a coal wagon on Olive street hove
into view from the west and passed eastwardly across
Twenty-second street. All this time the fire gong rang
continuously. When the coal wagon passed, Green,
as if he supposed that this was what the man had been
waving at, let his horses go again and they started
toward Olive street in a lope, though not so fast as
they had been going before reaching the alley. When
the wagon got near Olive street, Green started again

Green v. United Railways.

to pull down his team, but the ground was sleety and slippery, the hose wagon heavy, and the horses' heads had reached the defendant's north track when those on the hose wagon saw defendant's eastbound car close by, coming from the west. Green was trying to stop the team, pulling so hard he seemed literally to lift them off their feet. He could not stop them. It was too late to swing them due east along the north track, so with a great pull on the lines he lifted the horses around and started them toward the southeast and tried to get across in front of the car. This maneuver was unsuccessful. At about the east building line of Twenty-second street, the left front corner of the car struck the right front wheel of the wagon, broke it and broke the tongue from the wagon, the horses escaping in safety on the south side of the car, leaving the wagon on the north side. The wagon tipped, Green fell, the car passed on until its rear end was about fifteen feet east of the east crossing over Twenty-second street. Green was under the front truck of the car suffering from injuries which caused his death some two months later. Plaintiffs' evidence tended to prove that defendant's street car approached Twenty-second street at a very high and dangerous rate of speed, fifteen or twenty miles an hour, and though signalled to by the man in the street, paid no attention and gave no signal by bell or otherwise, of its approach, and made no effort to stop or slacken speed until the collision was imminent and unavoidable. The evidence on the part of the defendant tended to prove that Green drove from down Twenty-second street from Locust street to Olive street at breakneck speed without a pause or care, urging the horses along until the collision was inevitable. That the street car approached Twenty-second street at a speed of between nine and ten miles an hour; that the hose wagon was twenty-five or thirty feet north of Olive street when

the motorman discovered it. That the front end of the car was then about forty feet west of Twenty-second street. That the motorman reversed the power on the car; the reverse action commenced and continued, but the tracks were muddy and slippery and the car slid some seventy-five feet, struck the hose wagon and slid twenty feet farther; that the vestibule in which the motorman stood was enclosed in glass and he could not hear the fire gong above the noise and ringing of the bell of the street car; that it was a dark day with flurries of snow in the air. That the motorman did not see the man waving to him.

CAULFIELD, J. (after stating the facts).—I. Respondents' counsel concede, and we are constrained by the decisions of our Supreme Court to hold, that the judgment must be reversed because the instructions for plaintiffs required the jury to find for the plaintiffs if they found that defendant's negligent acts or omissions complained of "directly *contributed* to cause" the injuries of which plaintiff's father died, instead of that such acts and omissions caused the injuries. Where the pleadings and the evidence were substantially in the same state as in the case at bar like instructions have been emphatically condemned and held to be reversible error. [Hof v. Transit Co., 213 Mo. 445, 111 S. W. 1166; Krehmeyer v. Transit Co., 220 Mo. 639, 120 S. W. 78; Schmidt v. Transit Co., 140 Mo. App. 182, 120 S. W. 96; Wilson v. Transit Co., 142 Mo. App. 676, 121 S. W. 1083.] So far as their effect on this appeal is concerned, it is unnecessary to further discuss the instructions, but to avoid further error upon a retrial, the first and second instructions should be reframed, not only to avoid the error for which the judgment is reversed, but also so as to limit the jury, in their consideration of defendant's negligence, to a consideration of the specific acts and omissions relied upon as constituting defendant's

negligence. In their present form they tend to broaden the issues in that respect. It would also obviate the necessity of meeting another point if the plaintiffs prove that the collision occurred within the district defined by the speed ordinance.

II. The real controversy between the parties on this appeal is as to whether the cause should be remanded, defendant's contention being that the conduct of plaintiff's father, as shown without conflict by their own evidence, in approaching the crossing at such a rate of speed that it was impossible to stop in time to avoid the collision after discovering the close proximity of the car, constituted contributory negligence *per se* as matter of law. Such conduct on the part of an ordinary traveler in a vehicle under ordinary circumstances has been held to be negligence *per se* as matter of law (See Wheeler v. Wall, 157 Mo. App. 38, 137 S. W. 631); but it does not follow that it is to be denounced as negligence under any and all circumstances. ''The true legal rule is that one approching a railway crossing must exercise reasonable and ordinary prudence to avoid the danger necessarily to be apprehended there'' (Kenney v. The Hannibal & St. J. R. Co., 105 Mo. 270, 288, 15 S. W. 983, 16 S. W. 837); and it is elementary that the same act may be careful or negligent according to the variant facts and circumstances. This is true of the act of one approaching a railroad crossing as well as of the act of one in any other situation. As was said by our Supreme Court in Jennings v. St. Louis, I. Mt. & S. R. Co., 112 Mo. 268, 20 S. W. 490, concerning the rule requiring the traveler to look and listen, ''such a general rule of conduct must have grown out of experience and observations that were common and ordinary; hence the rule, like most others, is not of universal application, but has exceptions under exceptional circumstances.'' The case of Kenney v. Railroad Co.,

supra, is to the same effect. Let us consider, then, whether the facts and circumstances surrounding Green, the plaintiffs' father, at the time of and just before the collision, were so different from those usually surrounding the ordinary traveler that what would have been negligence in the latter *per se* might by reasonable minds be deemed consistent with the care to be expected of the ordinarily prudent man under such circumstances here disclosed. Whether he be an ordinary traveler or a fireman the ordinarily prudent man acts in the light of his experience of what is customary and usual and whether he has acted carefully or negligently must be adjudged in that light. Great speed on the part of the ordinary traveler is usually needless and of no public interest. Not being usual, he must know that it is not to be expected of him by others lawfully on the streets. It is of very slight inconvenience to him and none to the public if he be compelled to approach a street railroad track at slackened speed, ready to stop on the slightest warning. No alarm precedes his coming. No necessity exists for giving way to him. It is not customary to do so. He cannot reasonably expect it: On the contrary, it is his duty to give way to street cars which have a public duty to perform with reasonable dispatch. [Hickman v. The Union Depot Railway Co., 47 Mo. App. 65.] Therefore it is proper to exact of him that he approach a street railroad track cautiously, with his vehicle under control, looking and listening, ready to stop and give way to the street car, and any contrary course may well be deemed negligence *per se* as matter of law. With plaintiffs' father, the driver of this hose wagon, the circumstances were entirely different. He must of necessity have responded to the alarm of fire with the greatest practicable speed, for the safety of life and property might, and often does, depend upon his apparatus and the firemen on it arriving promptly at the fire.

He drove down Twenty-second street at the speed usual in going to a fire. This cannot be considered negligence *per se*. It was not reasonably to be expected that he should proceed with the deliberation and caution of an ordinary traveler. He was bound only to drive with that care which a prudent person would exercise under similar circumstances. By ordinance and public necessity his hose wagon had the right of way, and street cars had no right to intercept or obstruct it. The vehicle on its way down Twenty-second street was preceded by a continuous clamor of the gong, a sound so loud and penetrating that it could be heard far ahead and for blocks around. He slowed down at the alley just before reaching Olive street, evidently seeing the man waving. A coal wagon went by as if it was the thing waved at. The way seemed clear. The gong was sounding and those on Olive street could well hear it in ample time to hold back if they would. It was their duty to hold back; it was customary for them to hold back. He had the right of way by ordinance and there was nothing to indicate that any one was about to deny it to him. He was justified in assuming that those in charge of vehicles and cars on Olive street knew of his coming; he had a right to assume that they would heed the warning and give him the right of way. It was his duty to proceed in haste; he decided to proceed; he did proceed, with moderate haste, and if defendant's motorman had heeded the warning gong, and, heeding it, had observed the ordinance and held back from the hose wagon's way, he would have made the crossing in safety. We are not prepared to hold that his decision to proceed was unreasonable under the circumstances. Although it would have been negligence in law for a traveler under ordinary conditions to have approached the crossing at the speed with which Green drove, still, the circumstances surrounding Green so differ that reasonable minds might

consider the same conduct by him within the bounds of due care; hence we are of the opinion that the question was one properly for the jury. There is ample authority for this holding. [See Michael v. Kansas City Western Ry. Co., 163 Mo. App. 53, 143 S. W. 67; Hanlon v. Milwaukee R. R. & L. Co., 118 Wis. 210; Warren v. Mendenhall, 77 Minn. 145; Geary v. Metropolitan St. Ry. Co., 82 N. Y. Supp. 1016; City of New York v. Metropolitan St. Ry. Co., 85 N. Y. Supp. 693, affirmed in 182 N. Y. 536; Farley v. The Mayor, etc., 152 N. Y. 222; Chicago City R. R. Co. v. McDonough, 125 Ill. App. 223, affirmed 221 Ill. 69; Flynn v. Louisville Ry. Co., 110 Ky. 662, 62 S. W. 490.] The defendant cites us to Guiney v. Southern E. Ry. Co., 167 Mo. 595, 67 S. W. 296, as sanctioning a contrary view, but we are not persuaded to so construe it. In that case our Supreme Court did nothing more in this respect than construe an instruction and hold that it did not declare as a matter of law that the failure of the driver of a fire department fuel wagon to look and listen is under all circumstances negligence, but required of him nothing more than the exercise of ordinary care.

For the reason stated in the first paragraph of this opinion the judgment in the case at bar is reversed and the cause is remanded. *Reynolds, P. J.,* and *Nortoni, J.,* concur.