Garry **ALLMAN** and George Allman, by next
friend. Wava Allman, Respondents,

v.

**Elba YODER, Appellant.**

· No. 46772.

Supreme Court of Missouri,

Division No. 2.

June 8, 1959.

Motion to Modify Opinion or for Rehearing
or for Transfer to Court en Banc
Denied July 13, 1959.

E. E. (Tom) Thompson, Thomas A. Sweeny, Sam Mandell, Kansas City, John M. Belisle, Butler, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for appellant.

William J. Cason, Clinton, W. O. Jackson, Butler, for respondents.

BOHLING, Commissioner.

This is an action by Garry and George Allman, 13 and 10 years of age, respectively, by their next friend, Wava Allman, their mother, against Elba Yoder for $25,000 damages for the alleged wrongful death of Wayne W. Allman, their father, in an automobile accident. Cecil L. Page was an original party defendant, but plaintiffs dismissed with prejudice as to him. The trial resulted in a nine-juror verdict for the defendant. Plaintiffs' motion for new trial was sustained on the grounds the verdict was against the weight of the credible evidence and the instructions given at the request of defendant were prejudicially erroneous. Defendant contends plaintiffs failed to make a case of actionable negligence; that plaintiffs' decedent was contributorily negligent as a matter of law, and that defendant's instructions were correct.

Granting a new trial on the ground the verdict is against the weight of the evidence is within the exercise of a broad judicial discretion resting in trial courts, and is not to be disturbed in the absence of manifest abuse. We examine the record to ascertain if plaintiff made a submissible case against defendant on a submitted ground of recovery and, in the instant case, whether a recovery be barred by decedent's contributory negligence as a matter of law. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295, 300[9]; Schmidt v. Allen, Mo., 303 S.W.2d 652[1–3, 19, 20];

Moore v. Southwestern Bell Tel. Co., Mo., 301 S.W.2d 817, 820[3]; Berry v. Harmon, Mo., 323 S.W.2d 691, and cases there cited.

■ We consider the evidence on the issues involved in the light most favorable to a plaintiff, giving him the benefit of all favorable inferences arising therefrom, and disregarding defendant's evidence unless it aids plaintiff's case. Schmidt v. Allen, supra [1–3]; Zumault v. Wabash R. Co., Mo., 302 S.W.2d 861, 862[2, 3]; Moore v. Southwestern Bell Tel. Co., Mo., supra [1, 3]; Thompson v. Byers Transp. Co., 362 Mo. 42, 239 S.W.2d 498, 499[4].

Plaintiffs sought a recovery on the sole ground defendant was negligent under the provisions of section 304.022, subd. 1 (Laws 1953, p. 593, section 304.020, subd. 22), relating to the operation of emergency vehicles. (Statutory references are to RSMo 1949, V.A.M.S. and Supplement, unless otherwise indicated.) Section 304.022, subd. 1 provides:

"1. Upon the immediate approach of an emergency vehicle giving audible signal by siren or while having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as far as possible to the right of the traveled portion of the highway and thereupon stop and remain in such position until such emergency vehicle has passed, except when otherwise directed by a police or traffic officer."

■ As stated in Politte v. Miller, Mo. App., 301 S.W.2d 839, 842, operators of private motor vehicles are required, in the exercise of the highest degree of care, to be "on the lookout or on the alert" for emergency vehicles giving the required signal either by siren or by lighted lamp; and, as we read section 304.022, subd. 1, other motorists, upon the immediate approach of such an emergency vehicle, should yield the right of way, so far as here involved, by immediately driving to a position parallel to and as far as possible to the right of the traveled portion of the highway and thereupon stopping and remaining stopped until the emergency vehicle has passed.

Wayne W. Allman was a member of the Missouri State Highway Patrol. At the time in question he was operating a Patrol 1955 Chevrolet coach, an emergency vehicle within section 304.022, subd. 3(1), following instructions received from Chief Radio Operator Frank Huber to investigate an accident in the vicinity of Deepwater in Henry County. The collision involved occurred shortly before 4:00 p. m., October 27, 1955, a short distance east of the intersection of highway No. 35 with Cass County highway B. The day was clear and the pavements and shoulders of the highways were dry.

Highway No. 35 is a two-lane, east-west, concrete highway, 18 feet wide, with a concrete lip about a foot wide on each side of the pavement. The shoulders are 8 feet wide. Highway B is a north-south road, but has a short jog to the west for one proceeding north. It is an oiled bituminous road south and a gravel road north of the intersection. There was testimony that this intersection was 80 to 90 feet wide.

The service station and cafe of Leonard R. Irle is located at the northwest corner and approximately 100 feet west of the intersection.

Trooper Allman was eastbound in the south lane of highway 35. Defendant, driving a 1949 Plymouth sedan in good operating condition, was following about 150 feet behind a westbound 1947 Chevrolet pickup truck, having a standard 6-foot long bed, operated by Cecil Page in the north lane of highway 35. All cars were approaching the intersection of highways 35 and B. Defendant stated Page signaled to go south on highway B, when about 150 feet east of the intersection; that he, defendant, was traveling 35 to 40 m. p. h., slackened speed

to 25 m. p. h., continued on and was gaining on the truck; that he looked to the west just before Page turned, could see down the south lane of highway 35 along the side of the truck as far as the terrain would permit, but saw no approaching eastbound traffic; that Page, traveling 10 to 15 m. p. h., obstructed his view for about a second while turning; that he first saw the patrol car back of the truck when it was about even with the pumps of Irle's service station, about 100 feet west of the intersection.

Plaintiffs' witness Irle was at the grease rack, west of the pumps in front of his service station. He heard the horn and the brakes of the patrol car. He first saw the patrol car due south of him on the highway. The red light on top of the car was on and the horn was blowing. At that time the Page truck, coming from the east, was turning and its front part was going into the south lane and defendant's Plymouth was 50 to 70 feet east of the truck. As the truck turned south, the patrol car swerved to the north, crossed the center line with its left wheels about 100 feet west of the intersection, continued on with its left wheels in the north lane and, when it was "pretty near" defendant's Plymouth, "cut back" to the south lane of highway 35. He was noticing all three cars. The speed of defendant's Plymouth was not slackened and it was turned to the right at the point of impact.

Allman had swerved slightly to the north, passed a few inches behind the Page truck when it was within 2 feet of clearing the south half of the pavement; and, although Allman then swerved right to return to the eastbound lane and succeeded in getting the front end of his Chevrolet past the front end of defendant's Plymouth, which was on the north half of the pavement, the rear left fender and rear bumper of the Chevrolet struck the left front 8 to 10 inches, about the width of the left front headlight, of the Plymouth. This caused the Chevrolet to turn over and resulted in Trooper Allman's death.

Defendant testified he thought there was no danger and first sensed there might be an accident when the collision actually occurred, because he thought the patrol car "would miss me."

At the trial defendant testified his speed was 25 m. p. h. when the collision occurred, and that if Allman had had two feet more he would have cleared defendant's Plymouth.

Plaintiffs' witness DeMoss, a Clinton police officer at the time, testified that on the evening of the collision defendant stated that the red light on the patrol car was on; that he first saw the red light when the patrol car was "coming up over the hill"; that the speed of the patrol car was 50 or 55 m. p. h.; and that defendant did not say he was partially on the shoulder when the collision occurred. Witness Irle testified he would not say that the patrol car was going faster than most cars traveling highway 35.

Photographs introduced in evidence show grades on highway 35 in the vicinity of the collision. Westbound traffic comes over the crest of a grade, proceeds for a distance down a slight grade to a point approximately 250 to 300 feet east of the intersection and then up a slight grade and across the intersection to the crest of the grade a short distance west of the Irle service station.

W. A. Crowder, with the Highway Patrol since 1949, testified that the red light on top of the Chevrolet Allman was operating was the same type as the light on top of all the patrol cars, and could be seen on a level, straight highway for one-half to three quarters of a mile; that a westbound motorist on highway 35 approaching highway B could see the light, the siren and the top part of a patrol car, down approximately to the glass, when 150 feet east of the intersection for a distance of 621 feet to the west, when 200 feet east of the intersection for a distance of 653 feet to the west, and when 250 feet east of the intersection for a distance of 710 feet to the west, and

that the switch for the red light on Allman's Chevrolet was in the "on" position after the collision.

There was testimony to the effect that a 90-foot solid skid mark, made by the right wheels of the patrol car, started 120 feet west of the intersection; that at its west end the skid mark was 32 inches north and at its east end was 48 inches north of the south edge of the pavement, indicating the car moved 16 inches to the north to pass behind Page's truck. Witness Crowder did not see the accident. He testified that 107 feet of scattered, intermittent, sideways skid marks began almost in a line with the west edge of the traveled portion of highway B, led out toward the north edge of the pavement and then cut back and ended near the center line of highway 35. The debris was where these marks ended. This witness also testified that the debris was about 100 feet east of highway B.

Witness Irle, who was noticing the three cars, testified that the patrol car continued east with its left wheels a little over in the north lane pretty near to defendant's car, when it cut back to the south lane. Defendant testified that the patrol car was at no time directly in front of his Plymouth. The jury could find from the testimony and the photographs that the farthest the patrol car extended into the north lane was about one foot or a little more.

The evidence favorable to defendant was that decedent was traveling 80 to 90 m. p. h.; that there was no warning by siren, horn or the screech of tires, or the red light on decedent's car; that defendant's view of decedent's approach was obstructed by the truck making its turn; that when decedent came within defendant's vision west of the truck defendant applied his brakes lightly and started turning to his right, and that it was only a second's time until the collision occurred.

■ Plaintiffs made a submissible case of actionable negligence. A jury could find from witness DeMoss' testimony that

defendant saw the red light on Allman's patrol car as it was coming up over the crest of the grade west of Irle's service station and that its speed was 50 to 55 m. p. h. This finds corroboration in testimony that the red light of a patrol car could be seen by a motorist 150 feet east of the intersection for 621 feet to the west, and when 250 feet east of the intersection, for 710 feet to the west; that is, the red light could be seen for a distance of between 471 to 460 feet west of the east edge of the intersection. Defendant gained on the truck after Page signaled for the turn and Irle estimated defendant was about 70 feet behind when the truck started its turn south. Defendant continued ahead at 25 m. p. h. to the point of collision, was not alarmed, sensed no danger, thought the Allman car would miss him, and first turned to the right at the instant of impact. There was testimony that defendant could have stopped in three seconds or less. The Allman car needed only a few feet to clear defendant's car. Defendant had ample opportunity to act had he acted promptly. A jury could find that defendant failed to slacken speed or failed to stop on the paved portion of the highway and that such failure constituted negligence and the proximate cause of Allman's death as submitted by plaintiffs.

Was Allman contributorily negligent as a matter of law?

■ Section 304.560(3) provides: "All motor vehicles * * * shall be provided at all times with two sets of adequate brakes, kept in good working order * *." We have said a violation of the statute is negligence per se, but there are factors of excuse or justifiable violations. Rice v. Allen, Mo., 309 S.W.2d 629, 631[1]. Defendant contends the fact that Allman's car left only the one skid mark west of the intersection established that the brakes were not in good working order and Allman was contributorily negligent barring a recovery as a matter of law. Allman successfully avoided a collision with the truck

turning south across his line of travel. Generally the mere failure of the brakes to function properly is not conclusive and it is for the jury to say whether that fact constitutes a basis for a finding of contributory negligence barring a recovery. Assuming, without holding, that the stated fact may present the basis for a finding by a jury of contributory negligence, it does not compel such a finding, and we are unwilling to hold that where an application of the brakes results in only one skid mark it establishes as a matter of law that the brakes were not "in good working order" and negligence or contributory negligence on the part of the operator. Defendant's witness Steplen, who took some of the photographs showing the single skid mark, testified he had taken many pictures of accidents and more than fifty per cent of these pictures showed only one skid mark.

■ Defendant also contends that Allman was contributorily negligent as a matter of law in that he failed to exercise the highest degree of care to drive in a careful and prudent manner and at a rate of speed so as not to endanger the life or limb of others (section 304.010), and failed to operate the patrol car on the right half of the roadway, and failed to pass to the right of defendant's car (section 304.015, subd. 2, Laws 1953, p. 588, section 304.020, subd. 2. Consult Schmidt v. Allen, Mo., 303 S. W.2d loc. cit. 657, 658; Bowman v. Heffron, Mo., 318 S.W.2d 269, loc. cit. 275[10], on effect of repeal and reenactment of section 304.020 by Laws 1953, p. 587.). The following citations are not necessarily controlling. They did not involve the operation of an emergency vehicle. Major v. Davenport, Mo.App., 306 S.W.2d 626[2–4]; Young v. City of Farmington, Mo., 196 S. .2d 124[1–7]; Melber v. Yourtee, Mo., 203 S.W.2d 727, 730[7 et seq.]; Benoist v. Driveaway Co. of Mo., Mo.App., 122 S. W.2d 86, 90[5–7]. We are of the opinion the instant case is distinguishable from Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 545[2–9], and Johnson v. St. Louis Public Service Co.,

361 Mo. 844, 237 S.W.2d 136[1], companion cases involving an accident occurring October 19, 1947, Frandeka being the operator of Fire Battalion Chief Johnson's automobile, which was on an emergency run taking Chief Johnson to a fire. The emergency vehicle law was enacted, as stated, in 1953. The last two cases are to the effect that the operator of an emergency vehicle, having the right of way and not required to observe electric traffic signs under ordinance provisions, who had a clear view of a traffic-signal-controlled intersection when 270 feet therefrom, with the ability to stop within 160 to 140 feet or to have slackened speed and swerved and avoided striking a bus proceeding across the intersection, and who either did not look or, having looked, did not see the bus, which was plainly in sight, until within 70 to 80 feet of it, had no right to assume the right of way of the emergency vehicle would be observed, and was contributorily negligent as a matter of law when the emergency vehicle was permitted to collide with the center portion of the bus.

■ The repeal and reenactment of section 304.020 by Laws 1953, pp. 587–595 (sections 22–25, now section 304.022), specified the law for operating emergency vehicles are not to be regarded in the same light as pedestrians or operators of vehicles having no superior right over other vehicles. They are engaged in the performance of an emergency duty with dispatch under the police power. It is not reasonable to expect emergency vehicle operators to proceed with the deliberation and caution of operators of ordinary vehicles. Section 304.022, subd. 1 requires the operators of all other vehicles to be on the alert and to yield the right of way to an immediately approaching emergency vehicle giving an audible signal by siren or exhibiting the prescribed red light. Under the testimony favorable to plaintiffs Allman was traveling 50 to 55 m. p. h. and the red light on top of his patrol car was visible to westbound vehicles as he approached the crest of the rise west of the service station; and he

was justified in assuming westbound traffic would observe the statute until he knew or, in the exercise of ordinary care, should have known such traffic obviously did not intend to yield the right of way. Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 545[2, 3]; Politte v. Miller, Mo.App., 301 S.W.2d 839, 842[4, 5]; Rowe v. Kansas City Public Service Co., 241 Mo.App. 1225, 248 S.W.2d 445, 449; Green v. United Rys. Co., 165 Mo.App. 14, 145 S.W. 861, 863[3, 4]; Duffy v. Kansas City Rys. Co., Mo.App., 217 S.W. 883, 885 [1–3].

■ The testimony favorable to plaintiffs established that the lighted red light on Allman's vehicle could have been seen by Page and by defendant as Allman approached the crest of the hill west of the service station. The reasonable inference is that Allman would have passed the truck and the Plymouth without incident had each yielded the right of way as provided in section 304.022, subd. 1 or had each slackened speed or stopped on the north lane of highway 35. When Page started his turn south across the south lane of highway 35 he created an emergency situation which resulted in Allman's forcibly applying his brakes, sounding his horn, and swerving to the north to avoid a collision with the truck. A jury could find that Allman, while engrossed in avoiding the truck, reasonably assumed that defendant would observe the provisions of section 304.022, subd. 1 and would not continue forward at a constant speed of 25 m. p. h. in the north lane of highway 35; and when, after avoiding the emergency created by Page's truck, Allman was immediately confronted with the second emergency created by defendant's failure to observe the provisions of section 304.022, subd. 1 or his failure to slacken speed or stop in the north lane as submitted in plaintiffs' instruction. In these circumstances we think reasonable minds might well differ, as did some of the instant jurors, as to whether Allman was negligent in proceeding as he did.

Under subsection 4(2) (a–d) of section 304.022 the driver of an emergency vehicle is exempt from complying with specified rules of the road (for instance, may exceed the speed limit or disregard regulations governing direction of movement), provided, however (Subsec. 4(3)), that while in motion such vehicle give audible signal by bell, siren, or exhaust whistle as may be necessary *and* by the required lighted red lamp. We have hereinabove considered that the testimony favorable to plaintiffs warranted findings that Allman was traveling 50 to 55 m. p. h.; that defendant saw or should have seen his lighted red light as Allman approached the crest of the rise; that he was sounding his horn, which defendant says was not a signal by the siren; and that Allman was confronted with an emergency occasioned when the Page truck turned across and blocked his line of travel, causing him to swerve to the north to avoid the truck, and the emergency occasioned by defendant not complying with section 304.022, subd. 1. In these circumstances we consider it was a question of fact and not a question of law whether Allman was contributorily negligent in failing to give an audible signal by siren in addition to the signal by lighted red light within the provisions of section 304.022, subd. 4(3). Mayne v. May Stern Furniture Co., Mo.App., 21 S.W.2d 211, 213[3, 4]; Stack v. General Baking Co., 283 Mo. 396, 223 S.W. 89, 94[12]; Kieffer v. Bragdon, Mo.App., 278 S.W.2d 10, 15[4]; 5A Am.Jur. p. 356, § 211, p. 664, §§ 683, 684; 60 C.J.S. Motor Vehicles § 257a, p. 624; 61 C.J.S. Motor Vehicles § 527b, (3) (e) p. 554; Blashfield, Automobile Law and Practice, Vol. 1 (Part 2), p. 538, §§ 668, 670, 671.

The trial court did not abuse its discretion in granting plaintiffs a new trial on the ground the verdict was against the weight of the evidence.

We think it unnecessary to discuss the contentions with respect to whether prejudicial error was committed in giving cer-

tain instructions. The propriety of the instructions can best be determined upon a consideration of the evidence and instructions offered at any future trial.

The order granting plaintiffs a new trial is affirmed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.