Emma FICKEN, Respondent,

v.

Nadine HOPKINS, Respondent,

Arlie J. Goetz and E. L. Eickhoff, Appellants.

No. 50593.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Gayles R. Pine and Pine, Welling, Jones & Mitchell, Warrensburg, for plaintiff-respondent Emma Ficken.

Robert L. Wesner, and Wesner, Wesner & Meyer, Sedalia, for respondent Hopkins.

W. K. Gibson and Martin, Gibson & Gardner, Sedalia, for appellants.

STOCKARD, Commissioner.

On November 3, 1959, about 9:30 o'clock in the evening when the weather was misty or drizzling rain, Arlie Goetz was operating an ambulance, the property of E. L. Eickhoff, north on Grand Avenue in the City of Sedalia, and was taking Albert P. Ficken, who had suffered a stroke, to a hospital. In the back of the ambulance with Mr. Ficken were Charles Fox, who was administering oxygen to him, and also Emma Ficken, his wife, plaintiff in this action. Nadine Hopkins was operating a Chevrolet north on Grand Avenue ahead of the ambulance, and when she attempted to turn left onto 18th Street a collision occurred between the ambulance and the Chevrolet. Mrs. Ficken brought suit in two counts, the first for wrongful death of her husband, who died shortly after the collision, and the second for personal injuries to herself against Nadine Hopkins, Arlie Goetz, E. L. Eickhoff and Charles Fox, but at the trial she dismissed her suit as to Eickhoff and Fox. At the close of all the evidence the trial court directed a verdict in favor of Nadine Hopkins on plaintiff's suit as to both counts. The jury returned a verdict in favor of plaintiff and against Goetz for $10,000 on each count. The trial court thereafter granted Goetz a new trial as to Count I, the action for wrongful death. Upon retrial the verdict on Count I was for Goetz and against plaintiff, and this presents no issue on this appeal. Goetz has appealed from the judgment against him on Count II, plaintiff's action for personal injuries, in the amount of $10,000.

■ Goetz, Fox and Eickhoff each filed a cross-claim against Nadine Hopkins. Goetz sought $10,000 for personal injuries, and Eickhoff sought $640 for property damage to and loss of use of his ambulance. The Fox cross-claim was dismissed. Plaintiff's action and the two remaining cross-claims were all tried together. The jury verdict was in favor of Hopkins on each cross-claim, and Goetz and Eickhoff have each appealed. This court has jurisdiction because the amount in dispute on this appeal is $20,640.

■ Instruction No. 5, plaintiff's verdict directing instruction on Count II of her petition is challenged by Goetz, and preparatory to the discussion of it we shall make a few preliminary observations concerning the duties of the operators of motor vehicles, including emergency vehicles. Section 304.010 (all statutory references are to RSMo 1959, V.A.M.S.) provides that "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, * * *." There are no exceptions to this requirement. Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578; Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21. In Section 304.022 RSMo 1959, V.A.M.S., an "emergency vehicle" is defined, and that definition includes any "privately owned vehicle operated as an ambulance when responding to emergency calls." This would include the ambulance operated by Goetz and owned by Eickhoff. Although there is a contention that the ambulance was not on an emergency call, the evidence is to the contrary. The driver of an emergency vehicle, pursuant to par. 4(2) of Section 304.022, may, without violating the rules of the road, do four specifically enumerated things other drivers may not do. However, these specifically enumerated exemptions "shall apply only when the driver of any such vehicle while in motion sounds audible signal by bell, siren, or exhaust whistle as may be reasonably necessary, and when the vehicle is equipped with at least one lighted lamp displaying a red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle." One of the exemptions above granted is that the driver may "Exceed the *prima facie* speed limit so long as he does not endanger life or property; * * *." In this case, Goetz was exceeding the speed limit of 30 miles an hour applicable on Grand Avenue. While the ambulance was equipped with a siren and with a lamp capa-

ble of displaying the required red light, there is a dispute whether at and immediately prior to the collision the red light was turned on and the siren was being sounded. We should also mention that Section 304.-022 requires that upon the immediate approach of an emergency vehicle which is giving an "audible signal by siren or while having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle," the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as far as possible to the right of the traveled portion of the highway and thereupon stop and remain in such position until such emergency vehicle has passed, except when otherwise directed by a police or traffic officer. See Politte v. Miller, Mo.App., 301 S.W.2d 839.

Instruction No. 5, given at the request of plaintiff and which Goetz asserts is erroneous, with the deletion of phrases unnecessary to the discussion of the pending issues, is as follows:

"The Court instructs the jury that if you find and believe * * * that * * * defendant, Nadine Hopkins, was operating the Chevrolet automobile * * * northerly on Grand Avenue in the north bound traffic lane of said Avenue in front of the ambulance * * * which was being driven by the defendant, Arlie J. Goetz, northerly on said Grand Avenue * * * and if you further find that plaintiff, Emma Ficken, was riding as a passenger in said ambulance * * * and if you further find that the defendant, Nadine P. Hopkins turned on her left hand turn signal light at the time her automobile was between 20th and 19th Street on said Grand Avenue indicating her intention to make a left hand turn off of said Grand Avenue and that the defendant, Arlie J. Goetz, * * * saw said left turn signal light on the rear of the Hopkins automobile; that

the defendant, Arlie J. Goetz, thereafter drove and operated said ambulance from the north bound traffic lane * * * to his left to pass the Hopkins automobile at a speed in excess of 30 miles per hour at a time when the Hopkins automobile was in the process of making a left hand turn off of said Grand Avenue onto 18th Street in Sedalia, Missouri, and that the defendant, Arlie J. Goetz, failed to give an audible signal by horn or siren or by exhibiting a red light on the front of said ambulance indicating his intention to pass the Hopkins automobile * * *, and if you further find that in driving said ambulance in excess of 30 miles per hour when he was attempting to pass the Hopkins automobile, under the facts and circumstances shown in evidence was negligence, * * * and if you further find that failure on the part of defendant, Arlie J. Goetz, to give an audible sound of the horn or the siren or to exhibit the red lights on the front of said ambulance indicating his intention to pass the Hopkins automobile, at said time and place, was negligence, * * * and if you further find and believe * * * that as a direct and proximate result of the aforesaid negligence of the defendant, Arlie J. Goetz, said ambulance came into violent collision with the Hopkins automobile at the intersection of 18th and Grand Avenue, * * * and that plaintiff, Emma Ficken, sustained personal injuries as a direct and proximate result of the aforesaid collision, * * * and further that the negligence of the defendant, Arlie J. Goetz, directly contributed to cause the collision and plaintiff's injuries, then you are instructed that your verdict should be in favor of plaintiff, Emma Ficken, and against defendant, Arlie J. Goetz, on Count II of plaintiff's petition and this is true even though you may find that the defendant, Nadine P. Hopkins, driver of the Chevrolet automobile, was

also negligent, as defined in other instructions."

▇ Goetz asserts this instruction is erroneous because "it ignores the vital issue as to whether or not the ambulance was an emergency vehicle within the meaning of the provisions of Section 304.022." As previously noted, there was evidence from which the jury could find that the ambulance was equipped with a siren and a red lamp so as to be eligible to be classed as an emergency vehicle within the definition of the above statute, but the evidence was conflicting as to whether at the time of the events which resulted in the collision, the siren was sounding and the red lamp was turned on. By Instruction No. 15 the court defined an emergency vehicle, and by Instruction No. 14 it was submitted that if the jury found that the ambulance was being operated as an emergency vehicle, and that while it followed the Hopkins Chevrolet it displayed a red light, visible under normal atmospheric conditions for a distance of 500 feet to the front, and was sounding an audible signal by siren, and that Hopkins saw the red light and heard the siren, or should have seen the light and heard the siren, in time to drive the Chevrolet to the right of the traveled portion of Grand Avenue and stop until the ambulance had passed, but that Hopkins failed to do so and was negligent, and such negligence "solely caused the collision" then the verdict should be in favor of Goetz. This presented Goetz's theory of the case. Plaintiff's Instruction No. 5, purported to submit her theory of the case, that is, that the siren on the ambulance was not being sounded, and the red light was not turned on, and for that reason the operator was not entitled to do any of those things permitted by par. 4(2) of Section 304.022 to be done by the operator of an emergency vehicle. The instruction required the jury to find that Goetz "failed to give an audible signal by horn or siren or by exhibiting a red light on the front of said ambulance indicating his intention to pass the Hopkins automobile." Strictly speaking, the instruction should have required a

finding that the ambulance was not giving an "audible signal by bell, siren, or exhaust whistle," and that it was not "displaying a red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle." However, there was no evidence pertaining to any of the sounding devices on the ambulance mentioned above except a siren, and Goetz does not make a specific complaint as to this ineptly worded submission. If the jury found that Goetz failed to give an audible signal by siren and failed to exhibit a red light as submitted, then the ambulance was not entitled to exceed the speed limit of 30 miles. Limiting our ruling to the specific contention made by Goetz, we cannot agree that the instruction ignored the issue of whether the ambulance was operating as an emergency vehicle.

Goetz relies on Bramson v. Henley, Mo., 353 S.W.2d 609; Wiseman v. Jackson, Mo. App., 309 S.W.2d 356; and Kitchen v. Pratt, Mo.App., 324 S.W.2d 778. None of these cases pertain to an emergency vehicle, and we experience difficulty in determining what portion of the first two cases he believes to be applicable. Apparently reference is intended to the statement in the Kitchen case that "[i]nstructions of a plaintiff may not ignore a material issue shown by his (or her) own evidence." That statement is not applicable here. Plaintiff's evidence did not establish or tend to show that the ambulance was operating as an "emergency vehicle." On the contrary, it tended to establish that it was not, and when supported by the evidence, as it was, plaintiff was entitled to have the issue of the liability of Goetz submitted on that theory.

Goetz's next challenge to the instruction is that it told the jury that he could be found negligent "if he operated the ambulance in excess of 30 miles per hour while attempting to pass the Hopkins vehicle 'under the facts and circumstances shown in the evidence' when the evidence shows disputed essential facts and circumstances" as to the relative speeds of the two vehicles,

their proximity to each other and the intersection, the point of impact, and the status of the ambulance as a private or emergency vehicle.

In his argument under this point, Goetz asserts that "the criticism here leveled at Instruction No. 5 is in connection with the use of the phrase 'under the facts and circumstances shown in evidence.'" Appellant then argues that a verdict directing instruction must hypothesize sufficient essential facts to be found by the jury from which it may find certain acts or omissions to be negligence, and without so hypothesizing the facts the use of the phrase "under the facts and circumstances then and there existing" results in error. Cited are Myers v. Buchanan, Mo., 333 S.W.2d 18; Berry v. Harmon, Mo., 329 S.W.2d 784; and Kimmich v. Berry, Mo., 319 S.W.2d 546.

 The cases relied on do not condemn the use in all instances of the phrase "under the facts and circumstances then and there existing." What they do hold is that an instruction must "'make clear to the jury the essential fact issues which they are called upon to decide, and that where the evidence relating to such issues is conflicting and divergent, some of it supporting and other portions opposing the particular verdict, the instruction should in that event hypothesize, either by express recital or by reference to other instructions, the facts essential in law to support the verdict, * * *.'" Kimmich v. Berry, supra at p. 548. The use of the phrase here objected to, or a similar phrase, is condemned when an abstract submission is thereby made of a conclusion and the facts essential to a finding of liability, or nonliability in the appropriate situation, are not hypothesized. Instruction No. 5 hypothesized a factual situation, which if found by the jury authorized a finding of negligence on the part of Goetz. The phrase "under the facts and circumstances in evidence" referred to those facts so hypothesized.

 We have difficulty in determining what *essential* facts to plaintiff's right of

recovery Goetz contends were not hypothesized. As to speed, he asserts the evidence was conflicting because it shows that Hopkins was going 25 miles an hour, and that "she was going the same speed as Goetz when he was following her vehicle." There also was evidence that when the ambulance attempted to pass the Hopkins car it was exceeding 30 miles an hour. Instruction No. 5 hypothesized that Goetz moved the ambulance to the left "to pass the Hopkins automobile at a speed in excess of 30 miles per hour at a time when the Hopkins automobile was in the process of making a left-hand turn * * *." This was sufficient. Goetz also asserts that there was some difference in the testimony as to the *place* where Goetz undertook to pass. The precise point was not essential to plaintiff's right of recovery, but the instruction hypothesized that it was where Hopkins was making a left-hand turn off of Grand Avenue onto 18th Street. This was supported by evidence and was sufficient. We need not set out the remainder of this argument. Goetz has not pointed out any instance where *essential* facts to plaintiff's right of recovery were not hypothesized. This challenge to Instruction No. 5 is without merit.

 The next contention is that Instruction No. 5 is erroneous because "it fails to require an essential finding that the speed of the ambulance was a high, dangerous and excessive rate of speed under the circumstances." The only case cited is Politte v. Miller, Mo.App., 301 S.W.2d 839. There the operator of an automobile counterclaimed for personal injuries resulting from a collision with an emergency vehicle. The theory of the submission was that while the emergency vehicle could "[p]roceed past a red or stop signal or stop sign," it could do so "only after slowing down as may be necessary for safe operation," and the driver did not do so and thereby was negligent. See par. 4(2) (b) of Section 304.022. In the Politte case it was held that the instruction submitting such theory of negligence "omitted the requirement that the jury find that the ambulance was oper-

ating at an unsafe speed." We know of no reason why, under the circumstances of this case, a finding that the speed of the ambulance was "high, dangerous and excessive" was essential to plaintiff's right of recovery. We find no merit to this contention.

Goetz and Eickhoff each challenges Instruction No. 4 which is the usual cautionary instruction defining the terms "negligence" and "negligent" as the failure to exercise the highest degree of care, and then defining that term. They each assert that Instruction No. 4 ignored the theory that "the ambulance was an emergency vehicle on emergency call," and it "imposed a higher degree of care than the law required under [his] theory."

■ We should first mention that plaintiff is not necessarily bound by the theory of the case presented by defendants. Plaintiff's submission was on the theory that Goetz was the operator of a privately owned ambulance on an emergency call which was not entitled to the exemptions granted by par. 4(2) of Section 304.022 because there was no compliance with par. 4 (3) of said section. As previously noted, Section 304.010 requires that "Every person operating a motor vehicle on the highways of this state * * * shall exercise the highest degree of care, * * *," and neither it nor Section 304.022, pertaining to emergency vehicles makes any exception. In other words, the driver of an emergency vehicle authorized by par. 4(2) of Section 304.022 to do the things therein provided without constituting a violation of what are known as the rules of the road, when doing them, must exercise the highest degree of care, which is such care as a very careful and prudent person would ordinarily use under the same or similar circumstances. For this reason the statement in Allman v. Yoder, Mo., 325 S.W.2d 472, relied on by Goetz and Eickhoff which indicates that ordinary care only is required in some situations does not correctly state the degree of care required by the statute. There was no error in giving Instruction No. 4.

We turn now to the appeal of Goetz and Eickhoff from that part of the judgment denying their cross-claims against Hopkins. Other than the challenge to Instruction No. 4, discussed above, the only point presented is a challenge to Instruction No. 18, on contributory negligence given at the request of Hopkins.

■ The first contention is that "it ignores the vital issue as to whether or not the ambulance was an emergency vehicle within the meaning of the provisions of Section 304.022." This point is deficient because it does not set forth, as contemplated by Civil Rule 83.05, V.A.M.R., why it is contended the court erred in giving the instruction. However, by turning to the argument portion of the brief under this point, we find that the reason Goetz contends the instruction was erroneous is that "Instruction 18 requires Goetz to exercise the highest degree of care but this requirement was proper only if the ambulance was not an emergency vehicle because the operator of an emergency vehicle is required to exercise only ordinary care." Cited is Allman v. Yoder, supra, which we have already discussed. For the reasons previously set forth, this contention is of no merit.

■ The next contention is that Instruction No. 18 "fails to hypothesize sufficient essential facts as to the location of the Hopkins vehicle and ambulance on Grand Avenue, their proximity to one another, their speeds and proximity to the intersection when Goetz undertook to pass the Hopkins vehicle." He relies on such cases as Kimmich v. Berry, Mo., supra; Randall v. Steelman, Mo.App., 294 S.W.2d 588; and Politte v. Miller, supra. Instruction No. 18 hypothesized that Goetz "saw the northbound automobile being operated by Mrs. Hopkins as it approached 18th Street, signaling for a left turn with the mechanical turn signal," and that by so seeing said signal he knew or should have known of her intention to turn to the left, and that "thereafter defendant Goetz attempted to pass the automobile * * * at the intersection of

18th Street and Grand Avenue and the collision mentioned in evidence occurred as Mrs. Hopkins was in the process of making a left turn onto 18th Street, * * *." We fail to see why this did not constitute a sufficient hypothesization of those facts *essential* to a finding of contributory negligence. In some circumstances, a detailed hypothesization of facts as to location, proximity and speed may be required "to inform the jury of the essential facts that they are to decide," Randall v. Steelman, supra, but the facts hypothesized by this instruction, because of the circumstances, were adequate and sufficient, if found by the jury to be as submitted, to support or authorize a finding of negligence on the part of Goetz, and that is all that is required or contemplated by the rules pertaining to hypothesization of facts in a verdict directing instruction.

▆ The next contention is that the instruction did not require a finding that "Goetz knew, or in the exercise of the proper degree of care, should have known that in undertaking to pass the Hopkins vehicle there was danger of collision." He cites Highfill v. Brown, Mo., 320 S.W.2d 493. There an instruction was held to be erroneous because it "did not submit to the jury any facts on which to base a finding that plaintiff should have known [that the driver of the car ahead of him] intended to turn left into the driveway." Instruction No. 18 is not subject to this objection. Also cited is Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, an intersection collision case where the negligence charged was failure to keep a vigilant lookout, and that defendant drove his vehicle into the path of the other vehicle without slackening speed, deviating the course or giving a warning. It was held that the duty to slacken speed, change the course or sound a warning arose when the defendant saw or should have seen that the car in which plaintiff was riding was likely to proceed into the path of defendant's vehicle, and that the jury should have been so instructed. In this case, Instruction No. 18

required the jury to find that Goetz knew or should have known that Mrs. Hopkins was intending to turn to the left, which would have been into the path of Goetz in attempting to pass. The cited cases do not support the contention that Instruction No. 18 was erroneous for the asserted reason.

The final contention is that Instruction No. 18 permitted the jury to find against Goetz "on any theory it wished because it did not limit the jury's findings to the passing of the Hopkins vehicle as negligence but submits general negligence as well." The argument in the brief is as follows: "The instruction contains this language, 'and if you further find that defendant Goetz failed to exercise the highest degree of care in attempting to pass the Hopkins automobile under the aforesaid circumstances *and* [italics added in argument portion of brief] was guilty of negligence in the operation of the Eickhoff ambulance which directly contributed to cause the collision mentioned in evidence' * * * then * * * your verdict must be in favor of Mrs. Hopkins * * *.' No language connects the phrase "and was guilty of negligence in the operation of the Eickhoff ambulance * * *' with the phrase 'that defendant Goetz failed to exercise the highest degree of care * * *.' This results in an attempted submission of specific negligence along with a submission of general negligence and results in prejudicial error." In other words, Goetz complains that the word "therefore" or "thereby" or some word or phrase of similar meaning should have been inserted immediately following the italicized word "and," and that failure to do so resulted in the submission of general negligence.

▆ We do not question the rule that it is improper to submit both specific and general negligence in an instruction. See Annin v. Jackson, 340 Mo. 331, 100 S.W.2d 872; Hoeller v. St. Louis Public Service Co., Mo.App., 199 S.W.2d 7; Watson v. Long, Mo.App., 221 S.W.2d 967, 969. In this case Goetz relies primarily on the last cited case. However, the language

of the instruction in that case is not the same as in this case, and when Instruction No. 18 is read as a whole we think it would be reasonably apparent to a jury that there was only one submission of negligene, and that they were not entitled to find against Goetz if they believed only that he "was guilty of negligence in the operation of the Eickhoff ambulance." Instead, a reasonable construction of the language is that if they found the facts as hypothesized they were then authorized by reason of those findings to conclude that Goetz was guilty of negligence in the operation of the ambulance. "It has been well said 'that, in considering the language of any instruction, we should not be hypercritical but rather should be concerned primarily with its meaning to a jury of ordinarily intelligent laymen, crediting them with common sense and average understanding of the English language * * *.'" Samuels v. Klimowicz, Mo., 380 S.W.2d 418. We find no merit to the contention that the instruction submitted general negligence.

Goetz also asserts that the verdict in the amount of $10,000 in favor of plaintiff against him on Count II of the petition is so excessive as to be the result of bias and prejudice, and also that it is excessive because there was no substantial evidence that many of the complaints and conditions of the plaintiff resulted from the accident.

Plaintiff did not testify in person, but her deposition was offered as a part of her case and read to the jury without objection. At the time of the collision plaintiff was 62 years of age and weighed about 192 pounds. She was standing in the back of the ambulance, and the collision caused her to fall on top of Mr. Fox. She was not rendered unconscious and was able to get up by herself. According to plaintiff, she was "all bruised and shocked," she sustained "a big bump" on her right arm which, at the time her deposition was taken about ten months later, she could "kind of feel" and when pressed it would hurt. She also had a big blue spot on her back at about the belt line, and she had a lot of blue spots on her leg where the stretcher hit her when it fell. At the time her deposition was taken the spots had all disappeared. She sustained no cuts or skinned places, no other "swollen places or knots," no broken bones and no dislocations. Another ambulance was brought to the scene of the collision and she rode in it with her husband to the hospital. At the hospital her "blood pressure was 240 and [her] heart beat was 150." "Right afterwards" she went to a doctor in Versailles, and went every two weeks for a "long time" and at the time of her deposition she was going once a month because of her "blood pressure and [her] nerves." When she first went to this doctor she showed the bruises but the doctor said "there was nothing to be alarmed about" and they cleared up. Because of the bruises she sustained no limitation of motion or disability. Ten months after the accident she was still being treated for her nerves and high blood pressure, but her blood pressure was improved and was "pretty good again now." At some indefinite time after the the accident plaintiff spent two days in a hospital, but nothing further pertaining to this confinement is shown.

Dr. Claude Thurber, a qualified medical doctor, testified that because of "this specific burden on her mind [of testifying] and under the circumstances of her case" he had advised plaintiff that it "would be wise for her not to testify" at the trial of this case. He stated that he had treated plaintiff since November 9, 1961, which was about two years after the accident. Plaintiff's "main complaint" was "loss of weight, inability to eat, inability to sleep, increased nervousness and digestive upsets, including nausea and vomiting, constipation and related problems." The doctor testified that she "continues to have that persistent problem [nervousness] and complaint" and that "she appears apprehensive, tense and nervous." She told the doctor that her blood pressure had been up to 240, but according to the doctor it was then 150 to 160. Her weight was off at one time about 30 pounds,

but she would gain and lose weight. The doctor was asked a hypothetical question in which he was asked to assume the circumstances of the collision and the injuries substantially as related herein. He was then asked "whether the condition you find her having and from which this lady is suffering as you have told the jury * * * is the result of injuries sustained in that collision * * *," and the answer was, "Yes sir, it certainly could have contributed to her condition."

Plaintiff's two married daughters testified that before the accident their mother "did every thing to be done around the home, washing and ironing and she made garden and took care of that," and that she sewed, canned fruits and vegetables and was an "active church goer." However, after the accident, she was not able to do her work anymore because "she has lost weight and she is nervous if she is around people." Prior to the accident she had received medical treatment for more than one year for high blood pressure, and as the result of the accident plaintiff was confined to her bed for about three days. At the time of trial "every little thing" would upset her and she would cry and not be able to eat.

We find no evidence of special damages, and the parties make no reference to such damages in their briefs, either in their statement of facts or in argument.

■ Dr. Thurber's testimony was only as to what complaints plaintiff made to him, not that he found such conditions to exist, except that plaintiff had the "persistent problem" of nervousness and that she appeared to be "apprehensive, tense and nervous." He did not testify that this would be a continuing condition, and although he was expressly asked "whether the condition you find her having and from which [she] is suffering" was the result of injuries sustained in the collision, he gave the equivocal answer, "Yes sir, it certainly could have contributed to her condition." There is no testimony by Dr. Thurber that in his expert

opinion the condition of plaintiff did result from the collision. It has long been the rule that "expert testimony that a condition might or could have resulted from an accident or injury, when standing alone without other facts, is not substantial evidence from which a jury could find cause and effect." Ketcham v. Thomas, Mo., 283 S.W.2d 642, 649; Baker v. Kansas City Terminal Ry. Co., Mo., 250 S.W.2d 999; Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644. However, where there are other facts which tend to show an accident caused a certain condition, the assurance that it is scientifically possible is of some aid to the jury in determining what are reasonable inferences to be drawn from such facts. Kimmie v. Terminal R. R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561. This, at most, is all that the answer of Dr. Thurber amounted to. In this case the absence of the nervous condition before the accident and its occurrence immediately thereafter constitutes other evidence from which a jury could reasonably infer that the nervous condition of plaintiff, with the other related conditions, resulted in whole or part from the accident. But, there is no evidence whatever of any permanency, there is no evidence of special damages, and there is no evidence of physical injury except those relatively minor in nature and of short duration.

■ We disagree that the amount of the verdict demonstrates bias and prejudice which would require the reversal of the judgment pertaining to Count II of plaintiff's petition. We are of the opinion, however, that the verdict is excessive. "There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own peculiar facts. Due regard should be given to the purchasing power of the dollar [and] to the rule of reasonable uniformity of awards for similar injuries * * *." Burr v. Kansas City Public Service Co., 365 Mo. 115, 276 S.W.2d 120, 127. A careful consideration of the evidence leads us

to the concluusion that the verdict is excessive by an amount equal to the maximum permissible amount. We consider a verdict in the amount of $5,000 to be liberal, but if awarded by a jury it would be permitted to stand.

All the judgment except that part pertaining to Count II of plaintiff's petition is affirmed. If, within fifteen days after the filing of this opinion, plaintiff will enter here a remittitur of $5,000, that part of the judgment on Count II of plaintiff's petition will stand affirmed in the sum of $5,000 as of the date of the original judgment. Otherwise, that part of the judgment pertaining to Count II of plaintiff's petition is reversed and the cause remanded for a new trial.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.